MUTUAL BANK & TRUST COMPANY, a Corporation, v. STELLA GOEDECKE, Appellant.—159 S. W. (2d) 258.

Division One, December 12, 1941.

Rehearing Denied, February 26, 1942.

*Clem F. Storckman, William L. Igoe* and *Victor A. Wallace* for appellant.

1166

*Bryan, Williams, Cave & McPheeters* for respondent.

GANTT, P. J.—Action to decree an equitable mortgage on land described as follows:

"A lot in Block 1518 of the City of St. Louis, fronting Thirty feet (30′) on the North line of Cherokee Street by a depth Northwardly of One Hundred Eighteen feet (118′) one inch (1″) to an alley; bounded west by Ohio Avenue, together with improvements erected thereon known as and numbered 2649 Cherokee Street."

The chancellor decreed such a mortgage and the land was sold under the decree to plaintiff. Defendant appealed without bond. In

this connection it may be stated that, absent an intent to create a mortgage, a chancellor is without authority to decree an equitable mortgage. The question of intent must be determined on the facts, which, in substance, follow:

Defendant purchased the above described lot on which is located a business building. For many years, and as president of a company, defendant was a depositing customer of plaintiff bank. Occasionally plaintiff made short time small loans to the company. On purchasing the lot, and in 1937, defendant conferred with John J. Griffin, vice-president of plaintiff with reference to a bank loan to provide money to remodel the building and pay three notes secured by three deeds of trust on the property. It was contrary to a rule of plaintiff to make long time loans on land. Even so, the question drifted until 1939 when defendant, at the invitation of Griffin, went to the bank and was introduced to the loan agent of the Phoenix Mutual Life Insurance Co. From this the defendant, the bank and the loan agent negotiated with reference to the insurance company making a loan on the property. The negotiations continued until in July, 1939. At that time the insurance company offered a loan of $45,000 to be secured by a first deed of trust on the property. The offer was conditioned on an insured title and the remodeling of the building in accordance with certain plans and specifications, free of mechanics liens. The offer was not satisfactory to plaintiff's vice-president in charge of loans, which resulted in further negotiations with the insurance company.

Finally the insurance company made an offer which was satisfactory to said vice-president. Thereupon Vice-President Griffin negotiated with a construction company with reference to remodeling the building. The negotiations resulted in the company contracting with defendant on August 9, 1939, to remodel the building by November 15, 1939, in accordance with the plans and specifications approved by the insurance company.

After the execution of the remodeling contract, and on September 6, 1939, defendant executed a note for $45,000 payable in twenty years in installments to the Phoenix Mutual Life Insurance Company. The note was secured by a deed of trust on the above described property. Defendant received no money on this note and deed of trust.

On October 3, 1939, defendant executed and delivered to plaintiff a note for $45,000, due in six months and payable to plaintiff. Attached to the note was the usual form of collateral pledge contract which defendant also executed.

On recording the Phoenix Mutual Life Insurance Company deed of trust, and in due course, both the Phoenix note and deed of trust were delivered to plaintiff from the recorder's office, which note and deed of trust were held by plaintiff under the collateral pledge contract. At the time defendant executed the $45,000 note in favor of

plaintiff, a cashier's check for $45,000, payable to defendant, was delivered by plaintiff to defendant. Instantly, and at plaintiff's request, defendant endorsed the check and returned the same to plaintiff. Under defendant's endorsement on the check was typed the words "Goedecke Building Fund." Thereupon plaintiff deposited the check in the bank to the credit of said fund. At that time signature cards were signed providing for the withdrawal of money from the fund on the joint signatures of defendant and John J. Griffin, vice-president of the bank. Shortly thereafter the three notes amounting to $23,917.84 secured by prior deeds of trust on the property were paid from this fund and delivered to plaintiff. The deeds of trust securing said notes were not released of record. Plaintiff also retained these notes under the collateral pledge contract. In due course $22,412.52 was paid from this fund to the construction company on the remodeling contract and for incidental expenses connected therewith. In the meantime there where disagreements between defendant, vice-president Griffin and the construction company with reference to the remodeling of the building, which was not furnished by November 15, 1939. Later the contractor abandoned the construction. Thereafter mechanic's liens, amounting to $11,262.72, were filed against the property.

On the question of security Vice-President Griffin testified, in substance, as follows: I stated to defendant that plaintiff made no long time loans on land and suggested that an insurance company might make the loan. We then negotiated with reference to plaintiff making a short time loan of $45,000. I explained that the collateral for the short time loan must be a note and deed of trust on the land in favor of an insurance company and an agreement from the company to purchase the loan when the building was completed. I also explained that the three prior deeds of trust on the property would be paid from the short time loan, and the deeds of trust securing said notes would be held by plaintiff and released of record at the pleasure of plaintiff.

Thus it appears that there is no evidence tending to show that defendant intended to create a mortgage in favor of plaintiff by executing and delivering the Phoenix Mutual note and deed of trust to plaintiff. Furthermore, it appears that there is no evidence tending to show that plaintiff so understood said execution and delivery of the note and deed of trust. On the contrary, the evidence conclusively shows that plaintiff relied for security on its control of the $45,000 in the "Goedecke Building Fund," its supervision through Vice-President Griffin of the building construction, its control of the three notes secured by deeds of trust and its control of the note and deed of trust executed by defendant in favor of the Phoenix Mutual Life Insurance Company, on which note the insurance company agreed with plaintiff to make a loan to defendant.

In this connection plaintiff argues that by mistake the Phoenix Mutual note was not endorsed by the Phoenix Mutual Life Insurance

1170

Company. There is no claim of mistake in the petition, and the decree rules no such question. Furthermore, there is no evidence tending to show that the parties, including the Phoenix Mutual Life Insurance Company, understood that the agreement of the parties required such an endorsement. Furthermore, the evidence conclusively shows that the defendant and the Phoenix Mutual Life Insurance Company responded to all the requirements of plaintiff with reference to the loan.

Plaintiff cites Stark v. Kirkley, 129 Mo. App. 353, 108 S. W. 625; Lawrenceville Cement ▆▆▆ Co. v. Parker et al., 60 Hun, 586, 15 N. Y. Supp. 577, and Chauncey v. Arnold, 24 N. Y. 330. Those cases rule questions of defect in a mortgage. They are without application to the facts of this case.

The judgment should be reversed and the cause remanded with directions to cancel the deed purporting to convey the property to plaintiff. It is so ordered. All concur.